of the county court of his county. The indictment was quashed upon the ground that the omission charged did not constitute any offense recognized by law.

---

PLACIDO OLIVARI v. S. MENGER ET AL.

1. The order of a military commandant in time of war, after martial law has been declared, requiring an act to be performed by the citizen which is contrary to his inclination, constituted as to such an one a condition of duress, though no threats or demonstrations of violence were used at the time the act was performed.

2. Evidence, in such a case, is admissible of the political views of one pleading duress to show that he stood in such position toward the military authorities as would reasonably make him fear to disobey any military order published.

APPEAL from Bexar. Tried below before the Hon. Geo. H. Noonan.

Suit brought by Placido Olivari, to recover a piece of ground in the city of San Antonio, and to cancel a deed of conveyance which he alleged he signed under duress, on the tenth of September, 1862. The consideration paid was two thousand dollars in Confederate money, which Olivari accepted, lest, as he alleged, "he should be imprisoned for refusing to take the same."

In June, 1861, Placido Olivari entered into a contract with Simon Menger for a lease of the ground for an indefinite time. Under one of the provisions of the lease, Menger was to have the privilege of purchasing the prop-

erty by paying to Olivari, at any time within three years, the sum of two thousand dollars.

It was in evidence that on the first day of July, 1862, Gen. P. O. Hebert, then in military command of Texas, issued an order requiring all parties to receive Confederate money in payment of debt.

On the tenth of September, 1862, Menger, who had demanded a conveyance of the property, paid to Olivari the sum of two thousand dollars in Confederate money, and received from him a deed.

There was no evidence of threats or intimidation by Menger, at the time, or before the transaction was consummated. The order of Gen. Hebert seems to have been enforced. Rose, a witness, testified that he was incarcerated in jail at San Antonio for refusing to take Confederate money. There was evidence that the provost marshal of San Antonio, Buquor, told appellant he must take the Confederate money; and the testimony of Olivari himself was " that he made the deed and took the money, fearing that if he refused he would have to go to jail."

The judge below gave the following instructions asked by counsel for Menger, viz.:

" Vague and undefined fears of violence, without some contemporaneous demonstration of such violence, is not duress in contemplation of law. To constitute duress there must be overt acts of violence or threats at the time of making the contract. If there was no such violence or threats at the time of the payment of the money in this case as would constitute duress as here defined, you will find a verdict for the defendant.

" Fear of the military authorities, who then denounced and threatened all persons who refused to take Confederate money, is not such duress as will avoid the acceptance of such money in satisfaction of a debt."

The counsel for Olivari offered to prove on the trial that he was always loyal to the United States government, and that the defendant was a Confederate and disloyal, which was objected to and the objection sustained by the court.

*Teel*, for appellant, cited Forshay v. Furgerson, 5 Hill, 154; Coke on Littleton, 253; Vin. Abr., Duress, B., 23; Com. Dig., Pleader, 2; Bac. Abr., Duress, A.; Chitty on Con., 168, Edition of 1839; Inhabitants of Whitfield v. Longfellow, 13 Maine, 146; Eddy v. Herrin, 17 Maine, 338; 2 Watts, 167; 1 Bailey, 84; 6 Mass., 511; 6 New Hamp., 508; 2 Gallis, 337; 16 Ves., 157; 2 Br. Ch. R., 345; 1 Ves., Jr., 22.

*Wœlder & Upson*, for appellees, cited Donley v. Tindall, 32 Texas, 43; Ritchie v. Sweet, 32 Texas, 333; Burleson v. Cleveland, Bro & Co., 32 Texas, 397; Reavis v. Blackshear, 30 Texas, 753; Reed v. Nelson, 33 Texas, 471; Vanderhœven v. Nette, 32 Texas, 183.

WALKER, J.—This is an action brought by the appellant to set aside a deed for real estate in San Antonio, made, as he claims, under duress and in consideration of Confederate money.

The duress is denied, but the payment in Confederate money is admitted.

The contract, being executed, will not be set aside, unless it be shown that the receipt of the Confederate money was not voluntary on the part of the appellant, and this is the only question which should be submitted to the jury in this class of cases.

If the case of Vanderhœven v. Nette, 32 Texas, 183, conflicts with this doctrine, it cannot receive the approbation of this court.

It is useless to say that vague and undefined fears of

violence from nobody in particular, but from everybody in general, at some indefinite future time and with no contemporaneous demonstration of violence, do not constitute duress in contemplation of law.

This language, as applicable to the times and circumstances under which it is claimed the appellant deeded the property in question to the appellee, is hypothetical and difficult to be understood.

If at the time Olivari deeded his property to Menger martial law had been declared in the State of Texas, and if the military officer in command at San Antonio had published an order requiring all persons to receive Confederate money in payment of debts, it cannot be denied but the order meant compulsion under such penalties as martial law might impose. Whilst many citizens might and no doubt did voluntarily comply with the order, it was nevertheless unsafe for any citizen to disregard it, and it was compulsory duress to those who did not willingly obey it.

The opinion of the court in Vanderhœven v. Nette might apply to a normal state of society, but the condition of things in Texas was perfectly abnormal at the time Olivari made his deed to Menger, and it is a well known historical fact that every man who did not side in opinion with the dominant authority was in great fear of summary punishment, not only at the hands of the military, but (to use the somewhat loose language of the court in Vanderhœven v. Nette) from nobody in particular, but from everybody in general.

We think the law of this case is laid down in Wood v. Willis, 32 Texas, 678–9. The court say in that opinion, the question of duress aside, the law gave him, the appellant, a perfect right to object to the payment of his debt in unlawful money. * * * (See also remarks of Chief Justice Morrill in this case.) And for the reasons which

we have herein stated, the first and fourth assignments of error are well taken.

The evidence excluded was pertinent and proper in the case to show that the appellant stood in such a position toward the military authorities as would naturally and reasonably make him fear to disobey any military order published for the government of the people.

The evidence should have been admitted, under the rulings of this court in Ritchie v. Sweet, 32 Texas.

We think the second assignment of error is good. The evidence offered was not secondary. It was the evidence of a witness who had seen and read a letter claimed to have been written by Menger, the writing of which letter Menger denied.

The interrogatories had been crossed, and for anything we can see, the deposition was in due form of law.

We think the sixth assignment of error, for reasons already given, as well as the seventh, is well taken. The words "immediately imprisoned for such refusal," are objectionable.

Our reasoning also applies to the eighth assignment of error. The court certainly committed an error here in negativing the idea that there could be duress under a military order.

If in time of war, when the whole country is governed by the predominant force of armies, there can be no fear or duress imposed by military orders, we are at a loss to know how men could be made to fear a power which they are helpless to resist.

The judgment of the District Court is reversed and the cause remanded.

REVERSED AND REMANDED.